**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHERYL MAKRIS<br>8427 Colwyn Court, Apartment 3<br>Boardman, Ohio 44512<br>Plaintiff, | ) | CASE NO.<br><br>JUDGE: |
| v. | ) | **COMPLAINT FOR DAMAGES AND REINSTATEMENT** |
| EBAY, INC.<br>2025 Hamilton Avenue<br>San Jose, California 95125<br><br>Defendant | ) | **JURY DEMAND ENDORSED HEREIN** |

Plaintiff, Cheryl Makris, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES AND VENUE**

1. Cheryl Makris is a resident of the city of Boardman, County of Mahoning, State of Ohio.

2. eBay Inc. is a foreign corporation with its principal place of business located at 2125 Hamilton Avenue, San Jose, California 95125.

3. At all relevant times, eBay Inc. has met the definition of an "employer" under all applicable statutes.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Makris is alleging a Federal Law Claim under the Family Medical Leave Act ("FMLA").

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Makris is alleging federal law claims under the Americans with Disabilities Act of 1990 and Americans with Disabilities Act of 2008, 42 U.S.C. § 12101, *et seq*.





6. All material events alleged in this Complaint occurred in County of Mahoning.

7. This Court has supplemental jurisdiction over Makris's state law claims pursuant to 28 U.S.C. § 1367, as Makris's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**FACTS**

9. Makris is a former employee of Defendant.

10. Defendant employed Makris as a Customer Service Representative.

11. Throughout Makris's employment with Defendant she worked from her home.

12. Makris began working for Defendant on or around October 1, 2018.

13. Makris has chronic Grave's Disease and hypertension. ("Medical Conditions")

14. Makris's Medical Conditions affects her autoimmune system and her vision.

15. Makris's Grave's Disease is a disease.

16. Makris's hypertension is a disease.

17. Makris's Medical Conditions substantially limits one or more of her major life activities.

18. Makris has a record of her Medical Conditions.

19. As a result of her Medical Conditions, Makris is and was considered disabled within the meaning of the Americans with Disabilities Act.

20. As a result of her Medical Conditions, Makris is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

21. Defendant perceived Makris as being disabled.







22. Despite her actual disabling condition, Makris was able to perform the essential functions of her job.

23. Makris has a spouse named Milton Christos Makris ("Mr. Makris").

24. Mr. Makris suffers from serious medical conditions.

25. Makris has a record of Mr. Makris' medical conditions.

26. Defendant issued financial performance awards quarterly to Makris totaling $1,782.88 in 2019.

27. Defendant issued a financial performance award to Makris on February 28, 2020 in the amount of $1,183.27.

28. Defendant promoted Makris to an increased level of customer service in May 2019 as evidenced by the pay increase shown on her May 24, 2019 paystub.

29. In or around the middle of 2019 Makris suffered vocal damage using her voice for many hours performing customer service.

30. Makris visited the emergency room for evaluation of her vocal damage.

31. Makris was told by a nurse practitioner to refrain from work for ten days.

32. Makris applied for short term disability leave and was denied.

33. Makris appealed the denial of her short-term disability leave and won the appeal.

34. Makris's medical conditions caused her to miss work November 10, 2019 and November 11, 2019.

35. Makris applied for intermittent FMLA.

36. Sedgwick was the third-party administrator for the Defendant's short-term and long-term disability claims.





37. Sedgwick forwarded Makris' FMLA certification documents on or about November 14, 2019.

38. Makris scheduled an appointment with her doctor for November 22, 2019.

39. Mr. Makris' medical conditions flared and necessitated a hospital admittance on November 22, 2019 through November 26, 2019.

40. Makris contacted Kelly Allen, her team lead, and informed her about Mr. Makris' hospital admittance.

41. Makris worked approximately a half day on November 22, 25, and 26, 2019 , because she needed to care for Mr. Makris' medical needs.

42. Makris returned to her doctor on November 29, 2019 with a chronic cough.

43. Makris was diagnosed with a lung infection and given a ten-day course of antibiotics and an inhaler.

44. Makris received spousal FMLA certification documents ("Spousal FMLA") on or about December 2, 2019, which she filled out to completion and returned.

45. Sedgwick confirmed receipt of Spousal FMLA certification documents.

46. Mr. Makris was admitted to the hospital because of his medical condition from December 9, 2019 to December 13, 2019.

47. Makris informed Kelly Allen about Mr. Makris' hospitalization and her need to take time off from work.

48. Sedgwick forwarded Spousal FMLA certification documents on or about December 10, 2019.

49. Makris worked a half day on December 13, 2019 because she had to care for Mr. Makris upon his discharge from the hospital.





50. Mr. Makris was unable to care for his own basic needs due to his medical condition.

51. Makris cared for Mr. Makris' medical, hygienic, and nutritional needs while at home.

52. Sedgwick contacted Makris on or about December 22, 2019 and Makris confirmed her and Mr. Makris' medical conditions.

53. Makris continued to inform Kelly about her and Mr. Makris' medical conditions and her contact with Sedgwick.

54. On or about December 24, 2019, Sedgwick denied Makris's FMLA claim.

55. Sedgwick's denial of Makris's FMLA claim did not reference the Spousal FMLA claim.

56. On or about December 25, 2019, Makris contacted Kelly to question her about the denial from Sedgwick and ask how to appeal the denial.

57. On or about December 26, 2019, Defendant's human resource department sent Makris a letter which informed her she was absent from work without protected leave and must resign or be disciplined which could include termination of employment.

58. Defendant's human resource department letter stated Makris's days absent during her FMLA application period were counted to her detriment because Makris' FMLA claim was denied.

59. Defendant's human resource department letter told Makris to return to work by January 2, 2020 or be terminated from employment.

60. Makris informed Kelly of the letter and the FMLA claim and her need to miss more days of work to care for Mr. Makris because of his medical condition.

61. On or about January 13, 2020, Sedgwick approved the Spousal FMLA claim.

62. On or about January 22, 2020, Makris submitted documents to appeal the denial of her FMLA claim.





63. Kelly informed Makris that the days Makris missed work due to Mr. Makris' medical condition would not be counted in detriment to her employment because of Spousal FMLA claim approval.

64. Kelly stated the days which would not be counted against Makris were November 22, 2019 through November 26, 2019, December 9, 2019 through December 13, 2019, January 2, 2020, January 3, 2020, January 8, 2020, January 9, 2020, and January 13, 2020.

65. Makris filed an appeal to include other days not included in Kelly's list that Makris missed from work.

66. Defendant locked Makris out of its computer systems from January 22, 2020 until February 5, 2020.

67. Makris contacted Defendant's IT department who stated the profile for Makris was deleted.

68. Makris contacted Kelly about her deleted profile and inability to access the computer system.

69. Defendant sent Makris a replacement system which lacked necessary ports for the large screens Makris used.

70. The previous system Makris used had the necessary ports for the large screens Makris used.

71. Makris used large screens with her computer system to reasonably accommodate her vision impairment which was a symptom of her medical conditions.

72. Makris contacted Jody Newsome to request a remedy for the inability to access the computer systems and receive the correct system with the correct ports.

73. Makris received a replacement system which she connected and used to return to work on or about February 5, 2020.

74. On or about the middle of April 2020, Makris received a letter from Defendant's legal department stating Makris had no appeal available for her FMLA denied claim.





75. This letter was an interference with Makris's FMLA rights.

76. On or about April 20, 2020, Makris was disciplined for her absences which were protected by the Spousal' FMLA claim and her FMLA claim.

77. The April 20, 2020 discipline also included an allegation that Makris avoided surveys.

78. The April 20, 2020 discipline was incorrect because Makris's performance had not changed since she filed for FMLA, she had not avoided surveys, and she completed her work when she was medically able and when the Defendant allowed it.

79. The April 20, 2020 discipline was retaliatory against Makris's FMLA claims.

80. The April 20, 2020 discipline was retaliatory against Makris's FMLA appeal.

81. Makris appealed the April 20, 2020 discipline.

82. Defendant repeatedly sent Makris correspondence stating her employment was threatened by her taking time off from work.

83. Defendant's repeated correspondence threatening Makris's job were interference and retaliation with her FMLA claims.

84. On or about May 1, 2020, Makris emailed Shannon Macauley and made a protected complaint to Macauley.

85. Makris's protected complaint stated Makris was aware and in opposition to Defendant's interference and retaliation with Makris's FMLA claims, and Defendant's discrimination based upon Makris's disability.

86. Shannon emailed Makris a response promising to investigate Makris's protected complaint and schedule a meeting with Makris.

87. Shannon never investigated Makris's protected complaint.

88. Shannon never met with Makris to discuss Makris's protected complaint.





89. On or about May15, 2020, Makris emailed Jody to make a protected complaint about her opposition to Defendant's interference with her FMLA claim.

90. On or about May 18, 2020, Makris received an email from the Defendant's IT department.

91. The IT department's May 18, 2020 email alleged that Makris's internet service provider's ("ISP") modem was suddenly "releasing information inappropriately."

92. Makris contacted her ISP to verify the release of information from the ISP's modem was impossible.

93. Makris contacted Anthony DiBella and IT to inform them her ISP stated the release of information from the ISP's modem was impossible.

94. On May 19,2020, Anthony told Makris "you're done" and she must log off the computer and turn in her equipment.

95. On May 19, 2020, Makris received an employment termination letter citing the false asserted absences and a failure to follow policy.

96. The termination on May 19, 2020 was false allegations and pretext for disability discrimination, retaliation, and FMLA interference and retaliation.

## COUNT I: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

97. Makris restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

98. Pursuant to 29. U.S.C. § 2601 *et seq.*, covered employers are required to provided employees job-protected unpaid leave for qualified medical and family situations.

99. Defendant is a covered employer under the FMLA.

100. During her employment, Makris qualified for FMLA leave.



The Employee's Attorney.™



101. During her employment, Makris requested FMLA leave.

102. Defendants failed to properly assess Makris's request for FMLA leave.

103. Defendants denied Makris's FMLA claim.

104. Defendants denied Makris any appeal after the denial of her FMLA claim.

105. Defendants unlawfully interfered with Makris' exercise of her rights under the FMLA.

106. Defendants violated the FMLA when they terminated Makris' employment to preclude her from being able to utilize FMLA leave.

107. As a direct and proximate result of Defendant's conduct, Makris is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

**COUNT II: RETALIATION IN VIOLATION OF THE FMLA**

108. Makris restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

109. During her employment, Makris applied for FMLA leave.

110. Defendants denied Makris's FMLA leave.

111. Defendants threatened Makris's employment because she missed work based upon her medical condition.

112. Makris requested to appeal the denial of her FMLA request.

113. Defendants retaliated against Makris by terminating her employment when she requested to appeal the denial of her FMLA request.

114. Makris applied for and received spousal FMLA leave.

115. Defendants retaliated against Makris by terminating her employment when she utilized FMLA leave.





116. Defendants willfully retaliated against Makris in violation of U.S.C. § 2615(a).

117. As a direct and proximate result of Defendant's wrongful conduct, Makris is entitled to all damages provided for in 29. U.S.C. § 2617, including liquidated damages, costs, and reasonable attorneys' fees.

**COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF R.C.§ 4112.01 *et seq*.**

118. Makris restates each and every prior paragraph of this Complaint as if it were fully restated herein.

119. Defendant violated R.C. § 4112.02 by discriminating against Makris based on her disabling condition.

120. Defendant violated R.C. § 4112.02 when it discharged Makris based on her disability.

121. Defendant violated R.C. § 4112.02 when it discharged Makris based on her perceived disability.

122. As a direct and proximate result of Defendant's conduct, Makris suffered and will continue to suffer damages.

**COUNT IV: UNLAWFUL RETALIATION IN VIOLATION OF R.C. § 4112.02(I)**

123. Makris restates each and every prior paragraph of this Complaint as if it were fully restated herein.

124. As a result of the Defendant's discriminatory conduct described above, Makris complained about the disability discrimination she was experiencing.

125. Subsequent to Makris complaining of disparate treatment based on her disability to Defendant, Defendant denied Makris access to the computer systems.





126. Subsequent to Makris complaining of disparate treatment based on her disability, Defendant terminated Makris.

127. Pursuant to R.C. §4112.02(I), it is an unlawful practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

128. Defendant's actions were retaliatory in nature based on Makris's opposition to the unlawful discriminatory conduct.

129. As a direct and proximate result of Defendant's retaliatory actions against and termination of Makris, she suffered and will continue to suffer damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Cheryl Makris requests judgment in her favor against Defendant, containing the following relief:

(a) An order directing Defendants to place Makris in the position she would have occupied but for Defendants' discriminatory, retaliatory and/or otherwise unlawful treatment of her, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Makris;

(b) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Makris for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(c) Awarding against Defendant compensatory and monetary damages to compensate Makris for lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(d) An award of damages for any and all other monetary and/or non-monetary losses suffered by Makris in an amount to be determined at trial, plus prejudgment interest;





(e) An award of punitive damages;

(f) An award of costs that Makris has incurred in this action, as well as Makris's reasonable attorneys' fees to the fullest extent permitted by law; and

(g) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,

_/s/ Brian D. Spitz___________________
Brian Spitz (0068816)
**The Spitz Law Firm, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: brian.spitz@spitzlawfirm.com

*Attorney for Plaintiff Cheryl Makris*





**JURY DEMAND**

Plaintiff Cheryl Makris demands a trial by jury by the maximum number of jurors permitted.

_/s/ Brian D. Spitz_________________

Brian Spitz (0068816)
**The Spitz Law Firm, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: brian.spitz@spitzlawfirm.com

*Attorney for Plaintiff Cheryl Makris*



The Employee's Attorney.™

